**WINSTON LEE**
**ATTORNEY AT LAW**
**20 VESEY STREET ~ SUITE 400**
**NEW YORK, NEW YORK 10007**

**Tel. (212) 267-1911**
**Fax. (212) 964-2926**

April 5, 2019

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Norman Edwards*, 15 Cr. 854 (SHS)

Dear Judge Stein:

      We represent Norman Edwards, who is scheduled to be sentenced in the above-referenced matter on April 9, 2019. We write to supplement Mr. Edward's November 21, 2018 sentencing memorandum ("Def. Mem.") and in reply to the government's sentencing letter ("Gov. Ltr.") and letter addressing the defendants' relative culpability ("Relative Culpability Ltr."), both filed January 27, 2019.

      Mr. Edwards, who was the first defendant to plead guilty, was a street level dealer who was not involved in any gang violence. He was one of the three least culpable defendants, along with co-defendants Maurice Simmons and Kyle Mullings.[1] Relative Culpability Ltr. at 3. On February 6, 2019, the Court sentenced Simmons to the mandatory minimum term of five years. ECF No. 334.

1. <u>Mr. Edwards was not more culpable than his co-defendants</u>

      The government asserts that Mr. Edwards is "slightly more culpable" than Simmons and Mullings because (1) he possessed a firearm and (2) he promoted the gang's standing through rap videos. Relative Culpability Ltr. at 4. For the reasons discussed below, Mr. Edwards should not be viewed as more culpable than his co-defendants and we respectfully ask the Court to impose the same sentence imposed on Simmons.

---

[1] All three pleaded guilty to racketeering conspiracy and narcotics conspiracy.

### a. Firearm Possession

While Mr. Edwards did possess a firearm, he did so only on a small number of occasions and never in connection with acts of violence.[2] Moreover, Mr. Edwards was a less prolific drug seller than Simmons and Mullings, who both sold crack for several years. *See* Relative Culpability Ltr. at 3-4. Mr. Edwards, who resided in Pennsylvania throughout the period of the conspiracy, was not on Beach Avenue as often as his co-defendants and sold drugs only intermittently. *See id*. (describing Mr. Edwards' sales as taking place over "many months" rather than the "several years" attributed to Simmons and Mullings).

In addition, current Bureau of Prisons ("BOP") regulations effectively ensure a harsher punishment for Mr. Edwards because of the firearm possession. Unlike Simmons and Mullings, Mr. Edwards is categorically ineligible for a sentence reduction of up to one year under 18 USC § 3621(e)(2), even if he were to complete the Residential Drug Abuse Program ("RDAP"). *See* BOP Program Statement # 5331.02 (Match 16, 2009), *available at* https://www.bop.gov/policy/progstat/5331_002.pdf.[3] As a result, Mr. Edwards would serve significantly more time in prison on a 60-month sentence than Simmons or Mullings.

### b. Rap Videos

Finding that Mr. Edwards was more culpable than his co-defendants based on the content of his rap videos would effectively punish him for his speech. The government asserts that Mr. Edwards is more culpable because he promoted and maintained the reputation of the crew with his rap videos, which "enhanced the gang's reputation for violence and encouraged other members to commit crimes." Gov. Ltr. at 3. On its face, that assertion argues for punishment for the speech itself, which is impermissible under the First Amendment unless the speech falls within an exception. The government has not argued that an exception applies.[4]

Critically, the government is not arguing that the videos are probative of a disputed issue, such as Mr. Edwards' participation in the conspiracies. *See United States v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015) (holding that the evidentiary use of rap lyrics did not violate the First Amendment because the speech itself was not the proscribed conduct). Nor does the government assert that the videos are otherwise relevant to sentencing issues. *See United States*

---

[2] The assertions that Mr. Edwards possessed a firearm only on a small number of occasions and that his drug sales were intermittent are based on the government's written representations to counsel.

[3] The Court recommended RDAP for Simmons. ECF. No. 334. The PSR describes Mr. Edwards as a high risk for future substance abuse and includes outpatient treatment in the recommended special conditions of supervised release. PSR at 23, 25.

[4] No exception could apply. Most of the videos were posted to YouTube years before the Beach Avenue Crew committed any violent incidents -- before the gang had a violent reputation to enhance. The "snitching" video, for example, was posted to YouTube in 2012. Nothing indicates when the lyrics were penned. The government points to no instances where Mr. Edwards references acts of violence by the Beach Avenue Crew or specific gang rivalries. *Cf. United States v. Wilson*, 493 F. Supp. 2d 484, 488-89 (EDNY 2006) (defendant's rap lyrics were relevant because they "describe activity that resembles aspects of the central crime alleged . . . and appear to have been written after that crime was committed"). As for the claim that Mr. Edwards encouraged other members to commit crimes, the government offers no examples where Mr. Edwards called for imminent lawless action.

*v. Kane*, 452 F.3d 140, 143 (2d Cir 2006). Accordingly, Mr. Edwards' rap videos are not a proper basis for viewing him as more culpable than his codefendants.

2. <u>Unduly Harsh Presentence Conditions Warrant a Variance</u>

We ask the Court to recognize an additional basis for a Guidelines variance: the unduly harsh conditions Mr. Edwards was subjected to at the Metropolitan Detention Center ("MDC") earlier this year. The conditions and the circumstances surrounding them can be summarized as follows:

> Following an electrical fire, the West Building of the MDC was without normal electricity beginning on January 27, 2019. In the seven-day period that followed, the men detained in the MDC West Building, the majority of whom were in custody awaiting their trials, were subjected to inhumane conditions that posed unreasonable and substantial risks to their health and safety. For more than a week, MDC's cells remained dark and cold. People were confined in near pitch-black darkness. People sat shivering in their beds, huddled under blankets with little or no heat in the cells. The lack of light and heat was compounded by an array of other of brutal conditions. People were confined to their cells continuously for days. Hot showers and hot water were suspended or severely limited. Cells with toilets that were not functioning were filled with the smell of decaying feces. People continued to live in their soiled clothing and bedsheets without any laundry. Requests for medical and psychiatric care were ignored. People had no access to regular or hot food. Communication with the outside world—whether by email, phone or visits from lawyers or family—ceased.

Complaint at 2, *Scott v. Quay*, 19 Civ. 01075 (MKB) (EDNY 2019), Dkt. No. 1. Mr. Edwards is housed in the unit that first brought the conditions to the attention of the Federal Defenders of New York. *See id* at 22.

District courts can grant sentencing relief based upon unduly harsh conditions of confinement. *See, e.g.*, *United States v. Carty*, 264 F.3d 191, 196 (2d Cir. 2001) (remanding for reconsideration of downward departure in light of pre-sentence detention conditions in Dominican Republic). *See also United States v. Torres*, 2005 WL 2087818 at *2 (SDNY Aug. 30, 2005) (McKenna, J) (downwardly departing because the "enhanced deprivations . . . and suffering" by the defendant who was held in pretrial detention in Colombia would produce "a magnitude of punishment effectively disproportionate").

In a recent sentencing in this district, the Honorable Jesse M. Furman found that the MDC conditions warranted a variance, stating:

> [T]he bottom line is, the conditions that I read about are the conditions that one associates with a third world country and not a

>   country like this, and nobody in detention, whether convicted, not convicted, awaiting sentencing, should have to endure that as the detainees did at the MDC....I do think that some acknowledgment of these recent events is appropriate here.

*United States v. Ozols*, 16 Cr. 692 (JMF) (February 12, 2019).

    For the reasons discussed above and in Mr. Edwards' sentencing memorandum, we respectfully ask the Court to impose the mandatory minimum sentence of 60 months.

                                      Respectfully submitted,

                                                          /s/
                                       _____

                                       Winston Lee
                                       Dorea Silverman

                                       *Attorneys for Norman Edwards*

cc:    AUSAs Maurene Comey, Karin Portlock, Jacob Warren